## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TAMATHA HENNESSEY,

       *Plaintiff,*

vs.

       Case No. 21-2231-EFM-TJJ

UNIVERSITY OF KANSAS HOSPITAL
AUTHORITY,

       *Defendant.*

## MEMORANDUM AND ORDER

Pro se Plaintiff Tamatha Hennessey brings this lawsuit against Defendant University of Kansas Hospital Authority ("UKHA") asserting a state law claim of negligent supervision. UKHA has filed a Motion to Dismiss (Doc. 8) for lack of subject matter jurisdiction, and Hennessey has filed a Motion for Leave to File Sur-Response (Doc. 25) to UKHA's Reply. The Court denies Hennessey leave to file the Sur-Response.[1] For the following reasons, the Court grants UKHA's Motion to Dismiss.

---

[1] District of Kansas Rule 7.1 allows parties to file a motion, response, and reply, but makes no mention of a sur-response or surreply. The Court may authorize a sur-response or surreply but only in "extraordinary circumstances after a showing of good cause." *Mike v. Dymon, Inc*., 1996 WL 427761, at *2 (D. Kan. 1996) (citation omitted). Good cause exists when a reply brief improperly makes new arguments. *Id*. In this case, UKHA has not raised new arguments in its Reply brief supporting its Motion to Dismiss. Therefore, Hennessey has not shown good cause as to why the Court should grant her leave to file her Sur-Response, and her motion is denied.

## I.      Factual and Procedural Background[2]

Defendant UKHA is an entity established by the Kansas legislature under the University of Kansas Hospital Act (the "Act").[3]  The Act grants UKHA the authority to operate the University of Kansas hospital,[4] located in Kansas City, Kansas. UKHA operates the hospital for the benefit of the University of Kansas Medical Center and the residents of Kansas, "providing high quality patient care and providing a site for medical and biomedical research."[5]

Plaintiff Hennessey is a Missouri resident.  On February 12, 2019, Hennessey presented to the emergency room of the University of Kansas hospital with complaints of severe right shoulder and left jaw pain.  A nurse practitioner ordered an MRI of Hennessey's right shoulder and a CT scan of her cervical spine.  Hennessey also received a lidocaine patch, Motrin, and Ativan to help her relax.  The Ativan made Hennessey sleepy and as a result, she fell asleep during the MRI.  She awoke to the radiologist technician sexually assaulting her.

In May 2021, Hennessey filed suit against UKHA asserting a state law claim of negligent supervision.  Hennessey's Complaint alleges that UKHA had a duty to monitor its male radiology technologist when providing treatment to a sedated female patient.  The Complaint further alleges that UKHA directly caused or contributed to her injuries from the sexual assault.  In response to Hennessey's Complaint, UKHA filed a Motion to Dismiss for lack of subject matter jurisdiction. This motion is now ripe for the Court's ruling.

---

[2] Unless otherwise noted, the facts are taken from Hennessey's Complaint, which Hennessey has entitled "Petition for Damages."

[3] K.S.A. § 76-3301 *et seq.*

[4] K.S.A. § 76-3302(a)(7).

[5] *Id.*

## II.    Legal Standard

"Federal courts are courts of limited jurisdiction."[6]   Under Rule 12(b)(1), the Court may dismiss a complaint based on a lack of subject matter jurisdiction.   Generally, a Rule 12(b)(1) motion takes one of two forms: a facial attack or factual attack.[7]   "[A] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."[8]   A factual attack goes "beyond allegations contained in the complaint and challenge[s] the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations."[9]   A court therefore "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."[10]

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."[11]   A pro se litigant is entitled to a liberal construction of his pleadings.[12]   If the Court can reasonably read a pro se complaint in such a way that it could state a claim on which it could

---

[6] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[7] *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425 (2001).

[8] *Holt*, 46 F.3d at 1002-03 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

[9] *Id.* at 1003 (citing *Ohio Nat'l Life*, 922 F.3d at 325).

[10] *Id.* (citations omitted).

[11] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[12] *See Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because [the plaintiff] appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.") (citations omitted).

prevail, the Court should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with pleading requirements."[13]  However, it is not the proper role of the district court "to assume the role of advocate for the pro se litigant."[14]

### III.    Analysis

UKHA argues that Hennessey's suit must be dismissed because the Court lacks subject matter jurisdiction.  Federal subject matter jurisdiction arises on the basis of a federal question at issue or diversity of citizenship.  Federal question jurisdiction exists if the action arises under the Constitution, laws, or treaties of the United States.[15]  Diversity jurisdiction exists if the amount in controversy exceeds $75,000, and the plaintiff is a citizen of a different state than each defendant.[16]

Hennessey argues that the Court may exercise diversity jurisdiction because this action is between citizens of different states and the amount in controversy exceeds $75,000.  According to Hennessey, diversity exists between the parties because she resides in Missouri and UKHA is in Kansas.  She also seeks $2.5 million in damages.

In response, UKHA argues that it is not a "citizen" of Kansas because it is an arm of the state that enjoys Eleventh Amendment immunity.  Diversity jurisdiction only exists for actions "between citizens of different [s]tates,"[17] and an "arm or alter ego of a state" cannot characterized as a citizen for diversity purposes.[18]

---

[13] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[14] *Id.*

[15] 28 U.S.C. § 1331.

[16] *Id.* § 1332(a)(1).

[17] *Id*.

[18] *Dougherty v. Univ. of Okla. Bd. of Regents*, 415 F. App'x 23, 25 (10th Cir. 2011) (citations omitted); *Moor v. Cnty. of Alameda*, 411 U.S. 693, 717 (1973).

The Eleventh Amendment grants immunity to states from suits brought in federal courts by its own citizens or those of another state.[19]  This immunity extends "not only to a state but also to an entity that is an arm of the state."[20]  The determination of whether an entity is an "arm of the state" depends on the "nature of the entity created by state law."[21]  Eleventh Amendment immunity generally extends to state entities but not to political subdivisions, such as counties, municipalities, or other local government entities.[22]  In analyzing whether an entity acted as an arm of the state, the Tenth Circuit applies a four-factor test, considering: (1) "the character ascribed to the entity under state law"; (2) the "autonomy accorded the entity under state law"; (3) "the entity's finances"; and (4) "whether the entity in question is concerned primarily with local or state affairs."[23]  The defendant asserting Eleventh Amendment immunity bears the burden of proof.[24]

In this case, UKHA has not addressed the four-factor test in arguing that it is entitled to Eleventh Amendment immunity.  Instead, UKHA cursorily asserts in one paragraph that it is an arm of state and cites two statutes from the University of Kansas Hospital Act, which UKHA mislabels, in support of its argument.  As a result, the Court is left with the task of analyzing the four-factor test based on its own review of the Act and the pertinent case law.

---

[19] U.S. CONST. amend. XI.

[20] *Couser v. Gay*, 959 F.3d 1018, 1022 (10th Cir. 2020).

[21] *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 & n.5 (1997)).

[22] *Id.*

[23] *Id.* (citations omitted); *see also Couser*, 959 F.3d at 1025 (applying the same four factors).

[24] *See Teichgraeber v. Mem'l Union Corp. of Emporia*, 946 F. Supp. 900, 903 (D. Kan. 1996) (agreeing with cases holding that Eleventh Amendment immunity should be treated as an affirmative defense and must be proved by the party that asserts it).

## A.   Characterization Under State Law

In addressing this factor, the Court "conduct[s] a formalistic survey of state law to ascertain whether the entity is identified as an agency of the state."[25]  The Act does not expressly identify UKHA as a state agency.  But, it does describe UKHA as a "independent instrumentality of this state," whose exercise of rights, powers, and privileges are "deemed and held to be the performance of an essential governmental function."[26]  The Act also grants UKHA the "duties, privileges, immunities, rights, liabilities, and disabilities of a body corporate and a political instrumentality of the state."[27] These statutory provisions indicate that the legislature intended UKHA to act as an agency of the state.  Thus, this factor weighs in favor of granting UKHA Eleventh Amendment immunity.

## B.   Autonomy of UKHA Under State Law

Under the second factor, the Court considers "the degree of control the state exercises over the entity."[28]  The Act provides that UKHA is governed by a nineteen-member board of directors, thirteen of which are appointed by the governor and subject to confirmation by the senate.[29] Furthermore, upon the termination or expiration of these board members' terms, a nominating committee of the board will submit a slate of new directors for the governor to pick from, subject

---

[25] *Steadfast*, 507 F.3d at 1253 (citing *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164, 1166 (10th Cir. 2000)).

[26] K.S.A. § 76-3304(a).

[27] *Id*. § 76-3308(a)(1).

[28] *Steadfast*, 507 F.3d at 1253 (citing *Sturdevant*, 218 F.3d at 1162, 1164, 1166); *see also Crouse*, 959 F.3d at 1027 (citation omitted).

[29] K.S.A. § 76-3304(b).

to senate approval.[30]  These requirements show that the state controls the composition of the board of directors, and consequently, the overall operation of UKHA.

The Act also contains several provisions evidencing the state's control over UKHA with regard to the hospital building itself and additional hospital assets.  To construct new buildings or repair currently existing buildings on the University of Kansas Medical Center property, UKHA must first obtain approval from the state board of regents and the secretary of the administration.[31]  Upon completion, the new buildings and repairs become state-owned property.[32]  Furthermore, any transfer of hospital assets from the state board of regents to UKHA must be completed on terms favorable to the state board of regents, and any dispute arising during the transfer is resolved by the governor.[33]

Overall, these provisions show that the state board of regents, the secretary of the administration, and the governor exert control over UKHA.  Thus, this factor weighs in favor of finding that UKHA is an arm of the state.

## C.     Finances

Under the third factor, the Court studies the entity's finances, including how much state funding it receives and whether the entity can issue bonds and levy taxes.[34]  The Court also looks

---

[30] *Id*. § 76-3304(e).

[31] *Id*. § 76-3308a.

[32] *Id*.

[33] *Id.* § 76-3309.

[34] *Steadfast*, 507 F.3d at 1253; *see also Crouse*, 959 F.3d at 1029 (citation omitted).

at whether a "money judgment sought is to be satisfied out of the state treasury," focusing on legal liability for judgment instead of the practical impact a judgment would have on a state's treasury.[35]

This factor is difficult for the Court to analyze because UKHA has not submitted any evidence to the Court regarding its finances.  The Act indicates that UKHA receives at least some funding from the state.  K.S.A. 76-3309(a) states that UKHA is compensated from moneys appropriated by the legislature for providing services such as "education, research, patient care, care to the medically indigent and public service activities" of the University of Kansas Medical Center.  The Court assumes, however, that UKHA also receives revenue from patient billings, which cuts against a finding of Eleventh Amendment immunity.

As to the ability to issue bonds and levy taxes, the Tenth Circuit has explained that bond-issuing and tax-levying authority are important considerations because they are "characteristic attribute[s] of political subdivisions," which are not entitled the Eleventh Amendment immunity.[36]  Here, UKHA has the authority to issue bonds[37] but may not levy taxes.[38]  Thus, these considerations are neutral as whether UKHA is entitled to Eleventh Amendment immunity.

The final consideration under this factor—whether a judgment against UKHA would be satisfied by the state treasury—is especially problematic because the Tenth Circuit has described this consideration as "particularly important"[39] and the Court has no evidence regarding how a

---

[35] *Sturdevant*, 218 F.3d at 1164 (citation omitted).

[36] *Id*. at 1170.

[37] K.S.A. § 76-3312.

[38] *See generally id*. § 76-3308 (not including levying taxes as part of the powers granted to UKHA under the Act).

[39] *Sturdevant*, 218 F.3d at 1164 (citation omitted).

money judgment would be satisfied by UKHA. This lack of evidence, however, is not fatal to UKHA's motion. In *Sturdevant*, the Tenth Circuit noted the importance of this consideration but then declined to resolve the issue because the financial evidence presented by the parties was ambiguous.[40] Instead, the Circuit focused on the other factors delineated in the arm-of-the-state analysis.[41] Accordingly, in the absence of evidence regarding UKHA's finances, the Court will focus on the remaining arm of the state factors to determine if they definitively show UKHA is entitled to Eleventh Amendment immunity.

**D.      Local or State Concerns**

Under the fourth factor, the Court looks at whether the entity is concerned with local or state affairs, examining "the agency's function, composition, and purpose."[42] UKHA was created by the Kansas legislature to operate the University of Kansas hospital and provide a site for medical research for the University of Kansas Medical Center.[43] The mission of the hospital is to (1) "support the education, research and public service activities of the University of Kansas [M]edical [C]enter"; (2) "provide patient care and specialized services not widely available" in other areas of Kansas; and (3) care for medically indigent Kansas citizens.[44] The Act also states that UKHA's powers "are deemed an essential government function in matters of public necessity *for the entire state* in the provision of health care, medical and health sciences education and research."[45] These

---

[40] *Id*. at 1165-66.

[41] *Id*. at 1166.

[42] *Steadfast*, 507 F.3d at 1253 (citing *Sturdevant*, 218 F.3d at 1166, 1168-69); *see also Couser*, 959 F.3d at 1030.

[43] K.S.A. § 76-3302(a)(7).

[44] *Id*. § 76-3302(a)(4).

[45] *Id*. § 76-3302(b) (emphasis added).

provisions show that UKHA is concerned with the medical health of all Kansas citizens, not just those in a local city or county.  Thus, this factor weighs in support of finding that UKHA is entitled to Eleventh Amendment immunity.

## E.    Balance of the Factors

After examining the evidence before it, the Court concludes that UKHA is not autonomous from the state.  UKHA is defined as an instrumentality of the state by the state legislature, the state exerts control over its board of directors, controls the construction and repair of any buildings it operates, and UKHA provides an essential governmental function for all Kansas citizens.  The unknown factor is whether UKHA is financed by the state.  But, the lack of evidence on this factor is overcome by the weight of evidence showing that UKHA is an arm of the state.  Overall, UKHA is far more akin to a state agency than it is to a political subdivision.  Therefore, UKHA is entitled to Eleventh Amendment immunity as an arm of the state of Kansas.

Hennessey argues that the Eleventh Amendment does not apply in this case because UKHA has waived its application.  The Supreme Court has recognized two circumstances in which Eleventh Amendment immunity is waived.[46]  The first is when Congress "authorize[s] such a suit in the exercise of its power to enforce the Fourteenth Amendment."[47]  The second is when the state consents to suit in federal court.[48]  Neither circumstance applies in this case.  Hennessey's Complaint asserts a state law negligence claim, not a claim arising under federal law.

---

[46] *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).

[47] *Id.*  (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976)).

[48] *Id.* (citing *Clark v. Barnard*, 108 U.S. 436, 447-48 (1883)).

-10-

Whether UKHA is liable to Hennessey is a matter to be resolved in state court, not federal court.  Because UKHA is arm of the state of Kansas, it is not a "citizen" for purposes of diversity jurisdiction and is entitled to Eleventh Amendment immunity.[49]   Accordingly, the Court lacks subject matter jurisdiction over Hennessey's claim.  This case is dismissed.

**IT IS THEREFORE ORDERED** that Hennessey's Motion for Leave to File Sur-Response (Doc. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that UKHA's Motion to Dismiss (Doc. 8) is **GRANTED**.

**IT IS SO ORDERED**.

This case is closed.

Dated this 23rd day of December, 2021.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[49] *Dougherty*, 415 F. App'x at 25.