## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TAMATHA HENNESSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-cv-2231-EFM-TJJ |
| ) | |
| UNIVERSITY OF KANSAS ) | |
| HOSPITAL AUTHORITY, ) | |
| ) | |
| Defendant. ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Plaintiff's Motion to Compel Discovery (ECF No. 121). Plaintiff requests an order directing Defendant to produce documents withheld on the basis of the peer review and risk management privileges, attorney-client privilege and work product protection at the Rule 30(b)(6) deposition of Defendant's corporate representative. The matter is fully briefed and the Court is prepared to rule.[1] For the reasons discussed below, the Court denies Plaintiff's motion.

### I.      Procedural Background

The facts in this case have been discussed at length in prior orders and the Court will not reiterate them in detail here. Briefly stated, Plaintiff sought treatment at the University of Kansas Hospital Emergency Room after experiencing right shoulder and left jaw pain. An MRI and CT scan were ordered. Jonathan McIntire, a radiology technician at the hospital, performed the tests.

---

[1] Plaintiff certified (ECF No. 121-2) and the Court finds the parties conferred in good faith prior to the filing of the subject motion, in compliance with D. Kan. Rule 37.2, with the exception of the sufficiency of Defendant's privilege log for attorney-client and work product privileges discussed in Section III.C.

Plaintiff alleges McIntire sexually assaulted her during the MRI exam. Plaintiff asserts one claim against Defendant for negligent supervision.

Pertinent to the subject motion, Plaintiff served a notice to take the deposition of Defendant's corporate representative,[2] pursuant to Fed. R. Civ. P. 30(b)(6), which requested the representative bring with them to the deposition 11 categories of documents. In response, Defendant filed a motion for protective order,[3] objecting to many of the topics and requested categories of documents. After briefing and a hearing, the Court granted Defendant's motion in part and denied it in part.[4] Plaintiff then served a revised notice to take deposition, revising the topics and document categories requested in accordance with the Court's rulings.[5] Categories 10 and 11 are relevant to the issues presented here:

> 10.  Excluding peer review and risk management items and information, materials and information concerning Jonathan McIntire . . . regarding:
>
> > a. Information within files (whether designated as "personnel" files or otherwise) ever in the possession of Defendant regarding the hiring, screening, evaluations or investigations.
> >
> > b. Any and all investigations of Johnathan McIntire by anyone affiliated with Defendant including, but not limited to:
> >
> > > i. Performance of professional duties;
> > >
> > > ii. Complaints of any kind.

---

[2] ECF No. 91.

[3] ECF No. 95.

[4] ECF No. 107.

[5] ECF No. 110.

11.   Documentation of any incidents of sexual assault or sexual misconduct on the premises of Defendant by any staff member, employee, personnel, or agents of Defendant in the five (5) years preceding February 12, 2019.[6]

Plaintiff subsequently took the deposition of Defendant's corporate representative on December 11, 2023.[7] During the deposition, Defendant served Plaintiff with a privilege log[8] listing three sets of documents, totaling 63 pages, that Defendant was withholding on the basis of the attorney-client and work product privileges; the peer review privilege, pursuant to K.S.A. 65-4915, *et seq.* ("Peer Review Privilege"); and/or the risk management privilege, pursuant to K.S.A. 65-4921, *et seq.* ("Risk Management Privilege").

Plaintiff argues the Court should order Defendant to produce the documents being withheld. Plaintiff also suggests that the Court conduct an *in camera* review of the withheld documents and "simply redact that which is protected and grant Plaintiff access to the portions containing the relevant facts."[9] Defendant opposes Plaintiff's requests.

## II.      Legal Standards

Federal Rule of Civil Procedure 37(a)(3)(B) permits a party seeking discovery to move for an order compelling an answer, designation, production, or inspection. The motion may be made if a party fails to produce documents as requested under Rule 34.[10] An evasive or incomplete disclosure, answer, or response is treated as a failure to disclose, answer, or respond.[11] The party

---

[6] ECF No. 110 at 3–4.

[7] ECF No. 124-1.

[8] ECF No. 121-1.

[9] ECF No. 121 at 4.

[10] Fed. R. Civ. P. 37(a)(3)(B)(iv).

[11] Fed. R. Civ. P. 37(a)(4).

filing the motion to compel need only file the motion and draw the court's attention to the relief sought.[12] At that point, the burden is on the nonmoving party to support its objections with specificity and, where appropriate, with reference to affidavits and other evidence.[13]

When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to work product protection, the party must comply with the requirements of Fed. R. Civ. P. 26(b)(5). The party asserting the privilege or work product immunity bears the burden of establishing that the privilege or immunity applies.[14] To carry its burden, the party must make a "clear showing" that the objection asserted applies.[15] It must "describe in detail" the documents or information sought to be protected and provide "precise reasons" for the objection.[16]

The Court has diversity jurisdiction in this negligent supervision case. Therefore, Kansas law defines the contours of the privileges asserted.[17] Two of the privileges asserted by Defendant and at issue here are the Peer Review Privilege, K.S.A. 65-4915(b), and the Risk Management Privilege, K.S.A. 65-4925(a).

The Peer Review Privilege provides, subject to certain exceptions not pertinent here, that:

---

[12] *Williams v. Sprint/United Mgmt. Co*., No. 03-2200-JWL, 2005 WL 731070, at *4 (D. Kan. Mar. 30, 2005).

[13] *No Spill, LLC v. Scepter Candada, Inc.*, No. 2:18-CV-2681-HLT-KGG, 2021 WL 5906042, at *3 (D. Kan. Dec. 14, 2021).

[14] *Gassaway v. Jarden Corp*., 292 F.R.D. 676, 687 (D. Kan. 2013), *McCoo v. Denny's, Inc*., 192 F.R.D. 675, 680 (D. Kan. 2000).

[15] *McCoo*, 192 F.R.D. at 680.

[16] *Id.*

[17] *See* Fed. R. Evid. 501; *Y.R. ex rel. Reyes v. Bob Wilson Mem'l Grant Cnty. Hosp.*, No. 10-1312-JTM/GLR, 2011 WL 2038547, at *2 (D. Kan. May 24, 2011).

[T]he reports, statements, memoranda, proceedings, findings and other records submitted to or generated by peer review committees or officers shall be privileged and shall not be subject to discovery, subpoena or other means of legal compulsion for their release to any person or entity or be admissible in evidence in any judicial or administrative proceeding.[18]

This privilege may be claimed by the legal entity creating the peer review committee.[19]

"Peer review" is defined by K.S.A. 65-4915(a)(3) to include any of the following twelve functions:

(A) Evaluate and improve the quality of healthcare services rendered by healthcare providers;

(B) determine that health services rendered were professionally indicated or were performed in compliance with the applicable standard of care;

(C) determine that the cost of healthcare rendered was considered reasonable by the providers of professional health services in this area;

(D) evaluate the qualifications, competence and performance of the providers of healthcare or to act upon matters relating to the discipline of any individual provider of healthcare;

(E) reduce morbidity or mortality;

(F) establish and enforce guidelines designed to keep within reasonable bounds the cost of healthcare;

(G) conduct of research;

(H) determine if a hospital's facilities are being properly utilized;

(I) supervise, discipline, admit, determine privileges or control members of a hospital's medical staff;

(J) review the professional qualifications or activities of healthcare providers;

(K) evaluate the quantity, quality and timeliness of healthcare services rendered to patients in the facility;

---

[18] K.S.A. 65-4915(b).

[19] *Id.*

(L) evaluate, review or improve methods, procedures or treatments being utilized by the medical care facility or by healthcare providers in a facility rendering healthcare.[20]

The Risk Management Privilege provides that "the reports and records made pursuant to K.S.A. 65-4923 or 65-4924, and amendments thereto, shall be confidential and privileged," including:

(1) Reports and records of executive or review committees of medical care facilities or of a professional society or organization;

(2) reports and records of the chief of the medical staff, chief administrative officer or risk manager of a medical care facility;

(3) reports and records of any state licensing agency or impaired provider committee of a professional society or organization; and

(4) reports made pursuant to this act to or by a medical care facility risk manager, any committee, the board of directors, administrative officer or any consultant.[21]

Moreover, K.S.A. 65-4925(a) provides that "[s]uch reports and records shall not be subject to discovery, subpoena or other means of legal compulsion for their release to any person or entity and shall not be admissible in any civil or administrative action other than a disciplinary proceeding by the appropriate state licensing agency."[22]

---

[20] K.S.A. 65-4915(a)(3).

[21] K.S.A. 65-4925(a).

[22] *Id.*

III.        **Legal Analysis**

A.        **Timeliness of Privilege Log**

In passing, Plaintiff references Defendant's privilege claim as "late."[23] To what end Plaintiff makes this claim is unclear, as she does not argue that such lateness resulted in a waiver of the privilege. Without citing any authority, Plaintiff suggests simply that Defendant should have asserted privilege in its prior motion for protective order.[24] The Court rejects Plaintiff's unsubstantiated argument. The notice to take the deposition of Defendant's corporate representative instructed them to bring the requested documents to their deposition. In accordance with Fed. R. Civ. P. 26(b)(5), Defendant timely provided Plaintiff with a privilege log when it withheld the information or documents requested at the deposition.[25] Defendant was not required to raise the privilege issue in its motion for protective order, nor would it have been practical for it to do so. The Court granted in part Defendant's motion for protective order insofar as it objected to the topics and production of the documents at issue (Category 11) as overly broad, and significantly limited the scope of the documents to be produced. Defendant was not required to review, assess, and provide a privilege log with respect to the overly broad request, to which it objected in its motion, and it would have been unduly burdensome for it to do so.

---

[23] ECF No. 121 at 3.

[24] *Id*. and ECF No. 131 at 1.

[25] Indeed, the court found "waiver too harsh a sanction for untimely submission of [a] privilege log in most cases where the delay is not excessive or unreasonable." *White v. Graceland Coll. Ctr. for Pro. Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1266 (D. Kan. 2008) (finding no waiver of the privilege when privilege log served nearly a month after serving objections to document requests based on privilege and work product protection).

### B.    Peer Review and Risk Management Privileges

Plaintiff argues Defendant's peer review and risk management privilege objections should be denied based upon the ruling in *Adams v. St. Francis Regional Medical Center.*[26] Plaintiff notes the Kansas Supreme Court held in *Adams*, "[p]rivileges in the law are not favored because they operate to deny the factfinder access to relevant information."[27] In *Adams*, the court concluded "although the interest in creating a statutory peer review privilege is strong, it is outweighed by the fundamental right of the plaintiffs to have access to all the relevant facts," and the district court's order denying plaintiffs access to those facts violated plaintiffs' right to due process and a fair determination of their claims.[28] Additionally, the court in *Adams* found that documents containing factual accounts and witness names were not protected simply because they also included the officer's or committee's conclusions or decision-making process.[29] Finally, Plaintiff notes the trial court in *Adams* was directed to "redact that which [was] protected and grant plaintiffs access to the portions containing the relevant facts."[30] Thus, relying on *Adams*, Plaintiff requests this Court to grant a similar remedy here.

In opposition, Defendant discusses in detail the procedural history of *Adams*, arguing it is both "complicated" and distinguishable from this case.[31] Defendant stresses that in *Adams* the Kansas Supreme Court was faced with serious constitutional due process concerns that are not at

---

[26] 264 Kan. 144, 172, 955 P.2d 1169, 1187 (1998).

[27] 264 Kan. at 172.

[28] *Id.* at 173–174.

[29] *Id.* at 174.

[30] *Id.*

[31] ECF No. 124 at 9.

issue in this case. The plaintiff in *Adams* argued that a protective order entered by the state district court prohibited plaintiff from taking depositions and obtaining evidence from witnesses with firsthand knowledge of underlying facts because those persons gave statements and information during investigations protected by the Peer Review Privilege and/or the Risk Management Privilege.

Defendant also directs the Court to *Slattery v. Mishra*,[32] which it claims involved an identical argument to that of Plaintiff here. In *Slattery,* the court found the plaintiff had not shown that the information sought in withheld  documents on the basis of the Peer Review Privilege and Risk Management Privilege went "to the heart of his claim" or that he had "no other reasonable means to discover [those] facts and information so as to raise constitutional implications."[33] The court therefore declined to conduct an *in camera* review of the privileged documents challenged by the plaintiff.[34]

Defendant acknowledges it is aware of two District of Kansas cases in which the courts conducted *in camera* reviews based on *Adams*. However, Defendant contends Plaintiff misinterprets *Adams* "as granting a wholesale right to discovery of 'factual information' contained in otherwise privileged documents."[35] Defendant disagrees, arguing there is no order in this case prohibiting discovery of the facts at issue and, therefore, *Adams* is not applicable here. Finally, Defendant argues the information Plaintiff seeks to compel could not "go to the heart of

---

[32] No. 13-CV-1058-JAR-DJW, 2014 WL 1309070 (D. Kan. Mar. 31, 2014).

[33] *Id.* at *4.

[34] *Id.*

[35] ECF No. 24 at 15.

[Plaintiff's] claim," irrespective of whether it is characterized as factual in nature.[36] Defendant contends this is so because Plaintiff's basis for seeking the information at issue is to support her erroneous contention that Kansas law has "no requirement that [a] prior similar act be committed by the same person."[37] Defendant states Plaintiff cites no authority for her contention and that the law in Kansas is to the contrary. Defendant cites *Thomas v. County Comm'rs of Shawnee Co.*, in support of its argument for a negligent supervision claim to be legally submissible, the entity "must have reason to believe the employee's conduct would cause injury."[38]

> When a third party asserts a negligent retention and supervision claim against an employer, liability results not because of the employer-employee relationship but because the employer had reason to believe that an undue risk of harm to others would exist **as a result of the employment of the alleged tortfeasor**. The employer is subject to liability only for such harm as is within that risk.[39]

Before addressing the parties' arguments regarding *Adams*, the Court notes Plaintiff does not dispute that Kansas law governs the privilege issue in this case based upon diversity jurisdiction,[40] nor does Plaintiff contest the general applicability of the Kansas Peer Review Privilege or the Kansas Risk Management Privilege, K.S.A. 65-4915(a) and 65-4925(b), respectively, to the documents in dispute here. The Court finds, given the broad scope of materials covered by these statutory privileges, that the documents at issue are protected from disclosure by the Kansas Peer Review Privilege and/or the Kansas Risk Management Privilege. Notwithstanding

---

[36] *Id.*

[37] ECF No. 124 at 15–16.

[38] 40 Kan. App. 2d 946, 961, 198 P.3d 182, 192 (2008).

[39] *Id.* (quoting *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 362, 819 P.2d 587 (1991) (bold added)).

[40] Fed. R. Evid. 501.

this finding, these privileges are subject to constitutional due process limitations as recognized by the Kansas Supreme Court in *Adams*.[41] As discussed above, Plaintiff contends this Court should find, as the court did in *Adams*, that the underlying facts considered by peer review officers or committees and contained in privileged documents are discoverable and that the Court should conduct an *in camera* review of the withheld documents, redact that which is protected, and grant Plaintiff access to the portions containing relevant facts.

Based upon its thorough review, the Court finds *Adams* clearly involved unusual facts and circumstances that resulted in unique and serious constitutional due process concerns not present in this case. No orders have been entered in this case that prohibited Plaintiff from taking depositions or conducting other discovery into the underlying facts Plaintiff seeks to compel in her motion. In *Slattery v. Mishra*, the plaintiff raised the same issue raised by Plaintiff in this case. Like *Slattery* and unlike *Adams*:

> In this case, Plaintiff has not shown that the facts and information [sought] that are allegedly contained in the documents withheld . . . under the peer review and risk management privileges "go to the heart of [Plaintiff's] claim" or that [Plaintiff] has no other reasonable means to discover these facts and information so as to raise constitutional implications.[42]

Plaintiff's claim for negligent supervision in this case is based upon the alleged sexual assault of Plaintiff by **Jonathan McIntire**, the radiology technician who performed tests on Plaintiff. However, most of the documents Plaintiff seeks to compel Defendant to produce in this case relate to an "investigation of allegations regarding **Joshua Johnson**, employee discipline and

---

[41] 264 Kan. 144, 955 P.2d 1169. *See Slattery*, 2014 WL 1309070, at *4 (finding peer review and risk management privileges subject to constitutional due process limitations recognized in *Adams*).

[42] *Slattery*, 2014 WL 1309070, at *4.

evaluations of hospital practices."[43] Defendant cites *Thomas v. County Comm'rs of Shawnee Co.*[44] and *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*[45] for the legal principle that liability for negligent supervision against an employer results because the employer had reason to believe that an undue risk of harm to others would exist as a result of the employment of the alleged tortfeasor.  Plaintiff did not respond to this argument in her Reply and has not cited any contrary authority. The Court therefore finds that the withheld documents at issue regarding Joshua Johnson, who is not the alleged tortfeasor in the case, could not "go to the heart of Plaintiff's claim" in this case.

As the Court has previously noted, no orders have been entered in this case that prohibit Plaintiff from taking depositions or conducting other discovery into the underlying facts sought by Plaintiff here. No depositions have been quashed in this case, as they apparently were in *Adams*. Nor has the Court denied Plaintiff the opportunity or limited her ability to pursue written discovery regarding the underlying facts that Plaintiff seeks in her motion to compel. Also of significance is the fact that Plaintiff took the deposition of Defendant's corporate representative. In response to Plaintiff's request that the representative bring certain documents to the deposition with them, Defendant served the privilege log at issue here, which lists three sets of documents withheld on the basis of privilege.[46] The Court has already discussed the set of documents withheld regarding Joshua Johnson and determined they do not go to the heart of Plaintiff's claim. The "Subject Matter or Purpose" of the other two sets of documents listed on the privilege log are described by

---

[43] ECF 121-1 at 3.

[44] 40 Kan. App. 2d 946, 961, 198 P.3d 182, 192.

[45] 249 Kan. 348, 362, 819 P.2d 587, 598.

[46] See ECF No. 121-1.

Defendant as: "Correspondence on the investigation of allegations regarding Jonathan McIntire made by [Plaintiff] and evaluations of hospital practices and procedures;" and "Investigation of allegations regarding Jonathan McIntire made by [Plaintiff]."[47] The categories of privilege listed on the privilege log for both sets of documents include the Peer Review Privilege and/or the Risk Management Privilege. But, notably, Plaintiff's notice (duces tecum) for the deposition *excluded* "peer review and risk management items and information, materials, and information concerning Jonathan McIntire."[48] So, tacitly recognizing the applicability of these statutory privileges, Plaintiff did not even request them in the deposition notice (duces tecum). Plaintiff therefore is in no position to complain that it is being denied access to underlying facts contained in the peer review and risk management documents that it did not request. For all of these reasons, the Court finds Plaintiff has failed to show that she has no other reasonable means to discover these facts and information so as to raise constitutional implications.

The Court in *Adams* did not mandate that an *in camera* review be conducted under the circumstances presented here. As discussed previously, the serious constitutional concerns expressed in *Adams* do not exist here. Nor does the Court find persuasive the two cases cited in the briefing where courts conducted *in camera* reviews in cases involving requests for such review to obtain underlying facts contained in protected peer review materials. *Estate of Harris v. Alterra Healthcare Corp.*[49] was decided before *Slattery* and the court's brief order granting *in camera* review does not suggest that such review is required in every instance or that such review should

---

[47] *Id.*

[48] ECF No. 110.

[49] No. 09-1012-JTM, 2010 WL 11628770 (D. Kan. July 13, 2010).

be required under the facts of this case. *Y.R. v. Bob Wilson Memorial Grant County Hospital*[50] was also decided before *Slattery* and the court granted an *in camera* inspection as to a portion of the withheld documents because the privilege log provided an inadequate description of the documents, thus an *in camera* inspection was necessary. This Court makes no such finding here. On the other hand, the argument raised by the plaintiff in *Slattery* was essentially the same argument raised by Plaintiff in this case. The Court finds the analysis and ruling in *Slattery* persuasive and, consistent with the court's order in *Slattery*, this Court declines to conduct an *in camera* review of the privileged documents challenged here by Plaintiff.

### C.      Sufficiency of Defendant's Privilege Log for Attorney-Client Privilege and Work Product Protection

Plaintiff also argues Defendant's privilege log is insufficient with respect to attorney-client privilege and work product doctrine protection and does not include all of the information required under the applicable law in this District. In its response, Defendant argues Plaintiff raised this issue for the first time in this motion to compel. Defendant contends Plaintiff failed to comply with the Local Rule imposing a duty on an attorney to confer concerning a discovery dispute prior to filing a motion.[51] Instead, Plaintiff sent an email stating, "we need to revisit your objections to producing documents noted on your privilege log as protected by the peer review privilege. We believe that we are entitled to the facts generated, if not the conclusions reached, in any investigation."[52] In her Reply, Plaintiff does not respond to Defendant's failure to confer argument on this issue. Based upon Defendant's uncontested argument and supporting exhibit email, the Court finds Plaintiff

---

[50] 2011 WL 2038547 (D. Kan. 2011).

[51] D. Kan. Rule 37.2.

[52] ECF No. 121-3 at 5.

failed to comply with Rule 37.2 with respect to her argument that Defendant's privilege log is insufficient for Defendant's assertion of attorney-client and work product privileges.[53] Plaintiff's January 5, 2024 email only raises an issue with respect to the Peer Review Privilege and makes no mention of the sufficiency of Defendant's privilege log or its assertion of the attorney-client and work product privileges.[54] Nor does Plaintiff's Rule 37 certification[55] mention either of these issues as being discussed during her conferring efforts. This failure is significant—had Plaintiff conferred with Defendant before filing her motion, Defendant might have supplemented its privilege log and some of the issues considered here might have been avoided. Therefore, the Court will not entertain that part of Plaintiff's motion arguing that Defendant's privilege log is insufficient.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Discovery (ECF No. 121) is DENIED.

Dated this 9th day of February, 2024 at Kansas City, Kansas.

Teresa J. James
U.S. Magistrate Judge

---

[53] To the extent Plaintiff is also arguing Defendant's privilege log is insufficient with respect to its peer review and risk management privileges, the Court finds Plaintiff also failed to confer in compliance with D. Kan. Rule 37.2 on this issue prior to filing her motion to compel.

[54] ECF No. 124-2.

[55] ECF No. 121-2.