**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

TAMATHA HENNESSEY,

*Plaintiff,*

vs.

Case No. 21-2231-EFM

UNIVERSITY OF KANSAS HOSPITAL AUTHORITY,

*Defendant.*

**MEMORANDUM AND ORDER**

Plaintiff Tamatha Hennessey asserts a claim for negligent supervision against Defendant University of Kansas Hospital Authority ("UKHA") alleging that Defendant negligently failed to supervise its employee, Jonathan McIntire. Plaintiff alleges that McIntire, a radiology technician, sexually assaulted her while undergoing diagnostic imaging at the University of Kansas Hospital (the "Hospital"). Three motions are pending before the Court: (1) Defendant's Motion for Summary Judgment (Doc. 146); (2) Defendant's *Daubert* Motion to Exclude the Opinions and Testimony of Dr. Markenson (Doc. 144); and (3) Defendant's Motion to Strike Plaintiff's Rebuttal Experts (Doc. 137). As discussed in more detail below, Defendant is entitled to summary judgment on Plaintiff's negligent supervision claim based on a lack of foreseeability. Therefore, the Court grants Defendant's Motion for Summary Judgment and denies its *Daubert* Motion and Motion to Strike Rebuttal Experts as moot.

## I. Factual and Procedural Background[1]

### A. The Parties

Plaintiff is a Missouri resident with an extensive and complicated health history. She suffers from multiple mental disorders and drug and alcohol addiction. She has received psychiatric treatment since at least 2013. Additionally, in 2016, Plaintiff experienced severe erosive changes in her spine and underwent neurosurgery to correct this condition.

Defendant UKHA is a Kansas governmental entity.[2] Under Kansas law, Defendant is charged with the operation of the Hospital.[3] At the time of the events at issue, Defendant employed Jonathan McIntire as a radiology technician at the Hospital. McIntire was properly licensed by the Kansas Board of Healing Arts. The licensing process for a radiology technician involves an education and employment verification and a criminal history record check.

In determining McIntire's suitability for employment, Defendant asked a third-party agency to perform a background check as to McIntire's education, employment, and criminal history. The third-party agency verified McIntire's information and reported that he had no known criminal history. Until the event at issue, Defendant received no reports or complaints relating to sexually inappropriate conduct involving McIntire.

In 2017, an emergency department technician was charged with sexual misconduct in the emergency department of the Hospital.

[1] In accordance with summary judgment procedures, the uncontroverted facts are set forth in the light most favorable to the non-moving party.

[2] *See* K.S.A. § 76-3304.

[3] K.S.A. § 76-3302(a).

**B. The Emergency Department Visit**

On the night of February 12, 2019, Plaintiff presented to the emergency department of the Hospital complaining of chest, shoulder, and jaw pain as well as severe anxiety, a history of osteomyelitis, sores in her nose and mouth, and a fever. In the early morning hours of February 13, Plaintiff underwent x-rays of her chest and right shoulder. No abnormalities were found. Plaintiff was later seen by a physician who noted that Plaintiff was at high risk for infection because of her intravenous methamphetamine use.

Later that morning, a physician ordered MRIs of Plaintiff's cervical spine and right upper extremity with and without intravenous contrast. Before the MRI, Plaintiff stated that she was claustrophobic and required sedation to get through it. A Hospital employee then gave her an intravenous does of Ativan, a benzodiazepine drug, in preparation for the MRI.

Around 9:45 a.m., McIntire transported Plaintiff to the MRI machine. McIntire then performed four MRI procedures. According to the MRI report, McIntire was required to repeat several imaging sequences of Plaintiff's shoulder because the images showed her moving during the procedure. The last MRI image was acquired at 12:39 p.m. McIntire then transported Plaintiff back to the emergency department with a surveillance camera showing this occurring at 1:08 p.m. During the MRI procedures, McIntire was alone with Plaintiff.

After Plaintiff returned to the emergency department, a Hospital social worker visited her to complete a discharge planning assessment. Plaintiff, however, was asleep and could not wake up enough to speak with the social worker. The Hospital ultimately discharged her at 3:39 p.m.

**C. Plaintiff's Allegations of Sexual Assault and This Litigation**

At some point after her discharge, Plaintiff reported to University of Kansas police that McIntire assaulted her. McIntire was later charged with a felony in Wyandotte County, Kansas,

District Court. During his preliminary hearing, Plaintiff testified that she was in and out of consciousness during the MRI procedure, fell asleep while the imaging was being performed, but at one point awoke to find McIntire fondling her breasts and touching them with his mouth. Plaintiff also alleges that McIntire's pinching and groping of her breasts occurred suddenly and without warning.

Shortly before McIntire's criminal trial began, the State of Kansas dismissed all charges against him. McIntire denies Plaintiff's allegations. He asserts that the only contact he would have had with Plaintiff's breasts would have been incidental when he reached into her gown to remove five EKG leads with potentially ferrous materials before performing the MRI procedure.

Plaintiff filed this lawsuit pro se on May 19, 2021. The Court initially dismissed Plaintiff's claim upon Defendant's motion to dismiss. But, Plaintiff appealed that ruling to the Tenth Circuit Court of Appeals which remanded the case to this Court. During discovery, Plaintiff obtained counsel. The parties then filed their expert disclosures. After reviewing Plaintiff's proposed expert rebuttal testimony, Defendant filed a motion to strike Plaintiff's rebuttal experts under Fed. R. Civ. P. 26 and 37.

The Court entered the Pretrial Order on April 4, 2024. As set forth in the Pretrial Order, Plaintiff asserts a single claim of negligent supervision against Defendant due to McIntire's alleged sexual assault of her during the MRI. Defendant subsequently moved for summary judgment on Plaintiff's claim and to strike Plaintiff's expert, Dr. Markenson.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[4] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[5] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[6] If the movant carries its initial burden, the nonmovant may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[7] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[8] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[9]

## III. Analysis

Defendant seeks summary judgment on Plaintiff's negligent supervision claim on three grounds. First, Defendant argues that Plaintiff's claim fails because it is entitled to immunity under the Kansas Tort Claims Act. Second, Defendant argues that Plaintiff has no evidence that

---

[4] Fed. R. Civ. P. 56(a).

[5] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986)).

[7] *Id*. (citing Fed. R. Civ. P. 56(e)).

[8] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

[9] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

the alleged sexual assault was a foreseeable consequence of Defendant's lack of supervision of McIntire. And third, Defendant argues that Plaintiff's failure to obtain expert testimony as to her damages for emotional distress is fatal to her claim. As discussed below, the Court grants Defendant summary judgment on its second ground—a lack of foreseeability. Therefore, the Court declines to address Defendant's other arguments.

"Kansas law recognizes a claim by non-employee third parties for negligent supervision and retention."[10] "Negligent supervision includes not only the duty to supervise but also includes the duty to control persons with whom the defendant has a special relationship including the defendant's employees or persons with dangerous propensities."[11] The Kansas Supreme Court first recognized an employer's potential liability for the negligent supervision of its employee in *Kansas State Bank & Trust Co. v. Specialized Transportation Services, Inc.*,[12] where it held:

> When a third party asserts a negligent retention and supervision claim against an employer, liability results not because of the employer-employee relationship, but because the employer had reason to believe that an undue risk of harm to others would exist as a result of the employment of the alleged tortfeasor. The employer is subject to liability only for such harm as is within that risk. If, therefore, the risk exists because of the quality of the employee, there is liability only to the extent that the harm is caused by the quality of the employee that the employer had reason to believe would be likely to cause harm. However, it is not necessary that the precise nature of the injury alleged by the third-party plaintiff would have been foreseen by the employer.[13]

---

[10] *Van Deelen v. Johnson*, 535 F. Supp. 2d 1227, 1237 (D. Kan. 2008) (quoting *Nwakpuda v. Falley's, Inc.*, 14 F. Supp. 2d 1213, 1217 (D. Kan. 1998)).

[11] *Marquis v. State Farm Fire and Cas. Co.*, 265 Kan. 317, 961 P.2d 1213, 1222 (1998).

[12] 249 Kan. 348, 819 P.2d 587 (1991).

[13] 819 P.2d at 598.

"Whether risk of harm is reasonably foreseeable is a question to be determined by the trier of fact."[14] But, a district court may determine the question as a matter of law when it is the one conclusion at which reasonable persons could arrive.[15]

Defendant argues it is entitled to summary judgment because Plaintiff submits no evidence of McIntire's allegedly dangerous propensities or that Defendant knew or should have known of such alleged propensities. Plaintiff does not dispute this lack of evidence. Instead, she argues that Kansas law does not require her to show McIntire's dangerous propensities. According to Plaintiff, she is only required to show that it was reasonably foreseeable that a sexual assault could occur on the Hospital's premises. She submits evidence that in 2017 an emergency room technician was charged with sexual misconduct in the emergency department of the Hospital. Plaintiff argues this incident put the Hospital on notice that sexual assault could occur in the future and thus creates a genuine issue of material fact regarding foreseeability.

In support of her argument, Plaintiff relies upon *Nero v. Kansas State University*.[16] In that case, a female student brought a negligence claim against the university after she was sexually assaulted in a co-ed dormitory by a male student who also resided there.[17] In discussing the university's duty toward students living in its dormitories, the Kansas Supreme Court referred to the general rule that "a landowner has no duty to protect an invitee on the landowner's premises from a third party's criminal attack unless the attack is reasonably foreseeable. Prior similar acts committed upon invitees furnish actual or constructive notice to

---

[14] *Id.*

[15] *Id.* (citing *Robbins v. Alberto-Culver Co.*, 210 Kan. 147, 499 P.2d 1080, 1081 (1972)).

[16] 253 Kan. 567, 861 P.2d 768 (1993).

[17] 861 P.2d at 772.

the landowner."[18] The court then held that the university had a legal duty to use reasonable care under the circumstances to protect the dormitory occupants from foreseeable criminal conduct.[19] The court found that there was a question of fact as to the foreseeability of the sexual assault because the university knew there was a pending rape charge against the male student when they placed him in the dormitory and did not warn the plaintiff about him.[20]

*Nero*, however, is distinguishable from this case. First, *Nero* was decided on premises liability grounds rather than in the context of a negligent supervision claim. Thus, it does not provide definitive authority as to the type of evidence required to show foreseeability in a negligent supervision claim. Second, the evidence before the court focused on the university's knowledge of the male student's dangerous propensities. The court did not examine whether the sexual assault was foreseeable in a general sense as Plaintiff asks the Court to do here. And third, unlike the university, which knew of the male student's pending rape charge, the Hospital had no reason to know of McIntire's allegedly dangerous propensities. McIntire had no criminal history before his employment at the Hospital, and prior to Plaintiff's allegations, Defendant did not receive any reports or complaints related to sexually inappropriate conduct about him. Thus, *Nero* bears little resemblance and is not applicable to this case.

Plaintiff also relies upon *Nkemakolam v. St. John's Military School*,[21] a case decided by another judge in this District. The plaintiffs in *Nkemakolam* brought a negligent supervision claim against a boarding school alleging that their children were physically and mentally abused

---

[18] *Id*. at 780.

[19] *Id*.

[20] *Id*.

[21] 994 F. Supp. 2d 1193 (2014).

by other children at the school.[22] The defendant moved for summary judgment on the basis of a lack of foreseeability arguing that the plaintiffs must provide evidence that the school knew of the particular attacker's dangerous propensities.[23] The Court disagreed with the defendant and held that the plaintiffs were only required to show that the defendant knew or should have known that its action would likely have resulted in harm to students.[24] The Court found there was a genuine issue of material fact as to foreseeability because the evidence showed that the defendant implemented a system in which students disciplined other students, the defendant knew students were abusing this system by inflicting physical harm on other students, and the defendant had received behavioral complaints about some of the particular attackers.[25]

*Nkemakolam* is also distinguishable from this case. There, the Court addressed negligent supervision in the context of a school supervising its students, not in the context of an employer supervising its employee. Thus, in deciding that the plaintiff was not required to show an attack by a particular third party was foreseeable, the Court did not consider *Kansas State Bank*'s holding that liability in the employer-employee context "results . . . because the employer had reason to believe that an undue risk of harm to others would exist as a result of the employment of the alleged tortfeasor. The employer is subject to liability only for such harm as is within that risk."[26] The holding in *Kansas State Bank* suggests that, at least in the employer-employee context, the plaintiff must point to some evidence specifically related to the employee to prevail

[22] *Id*. at 1197-98, 1202.

[23] *Id*. at 1202.

[24] *Id*. at 1203.

[25] *Id*.

[26] *Kan. State Bank*, 819 P.2d at 598.

in a negligent supervision claim. Regardless, *Nkemakolam* is distinguishable from this case based on the facts alone. The plaintiff in *Nkemakolam* presented not only evidence of rampant lawlessness resulting from the defendant's disciplinary system but also evidence that the school knew of some of the student's dangerous propensities.[27] This is far more compelling evidence as to the foreseeability than what Plaintiff presents here.

Because both *Nero* and *Nkemakolam* are distinguishable from this case, the question remains as to whether Plaintiff is required to show that Defendant knew or should have known of McIntire's dangerous propensities to prevail on her negligent supervision claim. The Court, however, need not answer this question because even considering Plaintiff's evidence, it does not create a genuine issue of material fact as to foreseeability. An isolated incident of sexual misconduct two years before the event in question, in a different area of the Hospital, and involving a different type of employee, *i.e.,* not a radiological technician, did not give Defendant any reason to anticipate McIntire's alleged attack of Plaintiff. This is the only conclusion reasonable persons could reach. Therefore, the Court grants summary judgement in Defendant's favor as to Plaintiff's negligent supervision claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 146) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiff's Rebuttal Experts (Doc. 137) is **DENIED AS MOOT**.

---

[27] *Nkemakolam*, 994 F. Supp. 2d at 1203.

**IT IS FURTHER ORDERED** that Defendant's *Daubert* Motion to Exclude the Opinions and Testimony of Plaintiff's Expert, Dr. Markenson (Doc. 144) is **DENIED AS MOOT**.

**IT IS SO ORDERED**. This case is closed.

Dated this 27th day of September, 2024.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE